UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY DAVIS | ) | CASE NO. 1:13CV114 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Brittany Davis Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his September 2, 2011 decision in finding that Plaintiff was not disabled because she retained the residual functional capacity (RFC) for sedentary work and could perform jobs that exist in significant numbers in the national economy (Tr. 7-21). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

Plaintiff, Brittany Davis, filed her application for SSI on January 29, 2009, alleging she became disabled on January 29, 2009 (Tr. 104-06). Plaintiff's application was denied initially and on reconsideration (Tr. 57-59, 62-64). Plaintiff requested a hearing before an ALJ, and on March 22, 2011, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and a vocational expert (VE) also testified.

On September 2, 2011, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 7-21).  Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's requested for review (Tr. 2-5).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.  STATEMENT OF FACTS

Plaintiff was born on April 29, 1990, and has a high school education and was enrolled in her first semester of college (Tr. 26-27, 31).  She was employed as a part-time fast food worker for a short period of time in 2007 (Tr. 104, 139).

## III.  SUMMARY OF MEDICAL EVIDENCE

Plaintiff has a history of slipped capital femoral epiphysis at age eleven, treated with in situ fixation, and the removal of a single screw in 2002 (Tr. 218).  In November 2005, Ryan Goodwin, M.D., an orthopedic specialist, noted that Plaintiff walked with a slight limp, but was able to do most of her daily activities without much difficulty (Tr. 218).  Dr. Goodwin's impression was status post slipped capital femoral epiphysis, minimally symptomatic, with evidence of degeneration on the plain films (Tr. 219).  Dr. Goodwin did not recommend specific additional treatment, other than conservative treatment, such as anti-inflammatory agents and maintaining of her motion (Tr. 219). Plaintiff's doctor indicated that her hip was relatively stable (Tr. 218).  Plaintiff's main concern was her limp (Tr. 218).

On March 10, 2009, Plaintiff was examined by Susan J. Krueger, P.A. at Kaiser Permanente Medical Center for right hip pain (Tr. 447).  A pelvis study showed a well-healed fracture of the right

hip, signs of severe rheumatoid arthritis involving the right hip joint, and mild changes of rheumatoid arthritis in the left hip joint (Tr. 447). A study of the right hip showed an old hip fracture with coxa vara deformity and severe rheumatoid arthritis of the right hip joint (Tr. 447). Ms. Krueger discussed diagnosis, prognosis, and treatment options with Plaintiff, including the importance of ice, activity restrictions, instructions for range of motion exercises to avoid joint stiffness, and instructions to continue Ibuprofen (Tr. 445). Ms. Krueger referred Plaintiff to physical therapy, and discussed weight loss and a water exercise program (Tr. 445). Plaintiff received eight physical therapy sessions between March 10, and June 3, 2009 (Tr. 424-46). A physical therapy note dated June 3, 2009, indicated that Plaintiff reported improved symptoms, however, she reported increased pain after moving into an apartment over the weekend (Tr. 424). Plaintiff's physical therapist noted that Plaintiff was a poor historian in regards to pain/function, and, therefore, it was difficult to assess Plaintiff's overall improvement (Tr. 425). The physical therapist also noted that Plaintiff had poor motivation (Tr. 425).

In September 2010, Ms. Krueger prescribed physical therapy twice a week for four weeks (Tr. 489). Plaintiff attended five sessions (Tr. 463-65, 468-70, 481-86). On the last session dated January 7, 2011, the physical therapist noted that Plaintiff's pain was unchanged and she had continued limited physical therapy participation due to school/transportation (Tr. 464). Plaintiff completed home exercise program with minimum to moderate compliance (Tr. 464).

On March 18, 2009, Eulogio Sioson, M.D. performed a consultative evaluation (Tr. 378). Plaintiff stated that her main problems were hip problems, asthma, and polycystic disease (Tr. 378). A right hip study showed no evidence of fracture or dislocation (Tr. 418). No other bony or soft tissue abnormality was noted (Tr. 418). A rizer defect was seen on the proximal femur (Tr. 418). A compression type screw was seen transfixing the femoral neck (Tr. 418). There was symmetric joint

3

space loss (Tr. 418). Dr. Sioson's impression was history of degenerative hip problem and some loss of right thigh muscle mass down to Plaintiff's knee associated with genu valgum; mild intermittent asthma; and polycystic ovaries by history and signs of hirsutism under her chin; and obesity with a body mass index of forty-three (Tr. 379). Dr. Sioson opined that, based on pain limitation and his findings, Plaintiff's ability to do work-related activities, such as walking, climbing, standing, carrying, lifting, and traveling would be significantly limited, if not precluded (Tr. 379). He opined that Plaintiff's capacity for handling, hearing, and speaking would not be affected (Tr. 379).

On May 15, 2009, W. Jerry McCloud, M.D., a state agency physician, completed a Physical Residual Functional Capacity (RFC) assessment form (Tr. 409-16). Dr. McCloud opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and/or pull on an unlimited basis (Tr. 410). She could frequently balance and crouch, occasionally climb ramps/stairs; kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds (Tr. 411). In support of his conclusion, Dr. McCloud noted that Plaintiff did not require an assistive device (Tr. 410). She had fifteen- and ten-degree genu valum on the right and left, respectively (Tr. 410). She had painful range of motion of the right hip and right knee that appeared smaller than the left (Tr. 410-11). She had no heat, redness, swelling, subluxation, and gross deformity of the joints (Tr. 411). She had no problems with her hands (Tr. 411). She had no sensory deficit (Tr. 411). Manual muscle testing was affected by pain (Tr. 411). Her right thigh was about four centimeters smaller than the left, but her calf was slightly over one centimeter bigger than the left (Tr. 411). On November 8, 2009, state agency physician Walter Holbrook, M.D. affirmed Dr. McCloud's physical RFC as written (Tr. 450).

4

## IV. SUMMARY OF TESTIMONY

Plaintiff testified that her right hip "locks up" after standing more than about ten minutes or sitting more than about fifteen minutes (Tr. 33-34). She can prepare simple meals, does not do laundry, can take the trash right outside her door, and can grocery shop, using an electric cart (Tr. 27-28). She needs help putting her shoes and socks on (Tr. 28-29). She lays down most of the day, as that is her most comfortable position, and tries to swim (Tr. 29, 30, 35, 46). She cannot lift over ten pounds, cannot climb up stairs, cannot bend easily, cannot kneel, and cannot crawl (Tr. 40-42). Plaintiff has had problems getting to classes and appointments because of difficulty leaving her apartment building and walking to the bus stop (Tr. 31, 45). She uses crutches at home and has not been able to replace a shoe lift for financial reasons (Tr. 39, 47). She stated that her medical providers have told her there is nothing they can do for her, except perform a total hip replacement "in a few years" that will have to be repeated every ten years (Tr. 35).

The VE testified that Plaintiff does not have any past relevant work experience (Tr. 48). The ALJ posed a hypothetical question, assuming an individual the same age and education as Plaintiff, limited to lifting ten pounds occasionally, standing and walking for two hours, and sitting for six hours, but needing a sit-stand option every thirty minutes, occasional climbing stairs and ramps with handrails, bending and balancing, and precluded from kneeling, crawling, and working around hazardous conditions or temperature extremes. The VE testified that the individual could perform jobs as a charge account clerk, a dowel inspector, and an order clerk (Tr. 48-50). If the hypothetical individual could not sit for six hours or stand for two hours, there would be no competitive employment available (Tr. 51).

### V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520(c) and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

### VI.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole.  *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts one issue:

Whether the Commissioner's finding that the Plaintiff retains the residual functional capacity for a reduced range of sedentary work is supported by substantial evidence.

The ALJ has reviewed all of the significant medical evidence.  As reflected in the opinion of the ALJ, Plaintiff has not received the type of medical treatment needed by one who is a totally disabled individual (Tr. 15).  Since the alleged onset date of January 29, 2009, Plaintiff's treatment was limited to thirteen physical therapy sessions (Tr. 15).  In his decision, the ALJ discussed the

7

physical therapy records (Tr. 15), contrary to Plaintiff's argument (Pl.'s Brief at 9-10).

The ALJ applied the correct standards in evaluating Plaintiff's credibility in her decision. "Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain." *McGuire v. Comm'r of Soc. Sec.,* 178 F.2d 1295, 1999 WL 196508, at *6 (6th Cir. March 25, 1999) (unpublished). "The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain from the condition, or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.* (citing 20 C.F.R. Section 404.1529(b), and *Jones v. Sec'y of Health & Human Serv.,* 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ recited this standard in her decision (Tr. 18). The ALJ also recognized that if Plaintiff established such impairment, then the ALJ was also required to evaluate the intensity and persistence of the Plaintiff's symptoms, as required in *McGuire* (Tr. 15). "In evaluating the intensity and persistence of subjective complaints, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate [her] symptoms, and how the symptoms may affect the plaintiff's pattern of daily living." *McGuire,* 1999 WL 196508, at *6. *See,* 20 C.F.R. Section 416.929(C).

Substantial evidence in the record supports the ALJ's finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not fully credible (Tr. 15). In coming to that conclusion, the ALJ relied on considerable evidence in the record (Tr. 15, 26-28, 378, 424-46, 463-65, 468-70, 481-86).

Based upon said evidence, the ALJ correctly found that Plaintiff did not have functional limitations that were severe enough to preclude Plaintiff's performance of all substantial gainful activity. The ALJ explained that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms were not credible to the extent alleged (Tr. 15-16).

Furthermore, in accordance with the Commissioner's regulations, the opinion of any particular physician, treating or otherwise, is not determinative of the issue as to whether a claimant is disabled within the meaning of the Act. 20 C.F.R. Section 416.927(e)(1). This finding is a legal determination that is reserved for the Commissioner. 20 C.F.R. Section 416.903.

Based upon the record, the ALJ gave some weight to the opinions of both consultative examiner, Dr. Sioson, and state agency physician, Dr. McCloud (Tr. 15-16). According to Dr. Sioson, based on Plaintiff's pain limitations, her ability to do work-related activities, such as walking, climbing, standing, carrying, lifting, and traveling would be significantly limited, if not precluded (Tr. 379). Although the ALJ determined that Plaintiff's ability to do work-related activities would not be precluded, she determined that Plaintiff had significant limitations, and limited her to less than a full range of sedentary work (Tr. 16). The determination that Plaintiff could perform less than a full range of sedentary work is supported by Dr. Sioson's assessment of significant limitations (Tr. 379). The determination that Plaintiff could perform less than a full range of sedentary work is also supported by Dr. McCloud's assessment that Plaintiff was limited in her ability to stand and walk (Tr. 16, 410) Dr. McCloud opined that Plaintiff could stand and/or walk at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday (Tr. 410). Because the ALJ gave valid reasons for the weight assigned to the opinions of both Drs. Sioson and McCloud, the undersigned finds that substantial evidence supports the Commissioner's decision. The ALJ's determination that Plaintiff could perform sedentary work, except that she could only occasionally lift or carry ten pounds; could only stand for two hours; and must have a sit/stand option; with postural and environmental limitations, is supported by substantial evidence (Tr. 18, 20-22).

**VIII.  CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, and could perform jobs that exist in significant numbers in the national economy, and, therefore, was not disabled.   Hence, she is not entitled to SSI.

Dated: July 15, 2013                          */s/George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                            UNITED STATES MAGISTRATE JUDGE